IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN F. MARCHISOTTO | : | CIVIL ACTION |
| | : | |
| v. | : | No. 3:22-cv-1276 |
| | : | |
| ROGER W. DALEY, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                              **March 12, 2024**

Pro se plaintiff John F. Marchisotto moves for a preliminary injunction and temporary restraining order enjoining certain defendants in this action to "immediately halt any further alleged fraudulent actions, backdating of documents, destruction or alteration of evidence, and any efforts to cover up the alleged misconduct in this case." Pl.'s Prelim. Inj. & TRO Br. 17, ECF No. 71-1. He also moves to disqualify the New Jersey Attorney General and his entire office from representing any of the state defendants in this matter.

As discussed below, because Marchisotto has not made the required showing that he is likely to succeed on the merits of this action and that he will more likely than not suffer irreparable harm absent temporary injunctive relief, his motion for injunctive relief will be denied. And because he has not shown the Attorney General has an actual conflict of interest in representing the state defendants in this case, Marchisotto's disqualification motion will also be denied. To assist the Court in moving this matter forward to a resolution, the parties will be directed to submit status reports addressing what further proceedings are necessary and appropriate in this case.

## BACKGROUND

In March 2022, Marchisotto filed the complaint in this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, seeking to challenge various aspects of a state-court probate matter involving his deceased father's estate. In the underlying probate matter, filed in the New Jersey

Superior Court, Middlesex County, Marchisotto alleged his father's will was the product of undue influence. *See* ECF No. 71-6 at 81. He also claimed his sister, Debra Canova, the executor of their father's estate and administrator of his irrevocable trust, had violated her fiduciary duties with respect to the accounting of the estate and its assets. *See id.* The probate matter was dismissed with prejudice in April 2020. *See id.* at 81-82. Marchisotto then appealed the dismissal to the Appellate Division.

In 2021, while the appeal was pending, Canova's counsel, Louis Lepore, filed in the trial court a motion to withdraw funds belonging to the irrevocable trust which had been deposited with the Superior Court Trust Fund as well as a motion for final distribution of those funds. ECF No. 71-6 at 9-17, 69-79. On January 11, 2022, the Honorable Roger Daley issued an order granting both motions. ECF No. 71-5 at 46-49. A month later, on February 8, 2022, Judge Daley issued another order authorizing the Superior Court Trust Fund to release $612,541.94 to Canova as trustee of the irrevocable trust and directing that the funds be mailed to Lepore as counsel for the trustee. ECF No. 71-5 at 50-51. Marchisotto again appealed. He also filed this federal-court action, naming as defendants Judge Daley, Lepore, Canova, and a host of other individuals and entities.

Marchisotto's federal-court complaint primarily focused on Judge Daley's February 8 order. Marchisotto alleged that both the order and the accounting documents Lepore submitted to the court were false and fraudulent,[1] and accused Lepore and Judge Daley of fraud and financial

---

[1] For example, Marchisotto alleged the February 8 order falsely stated that "[n]o other person or party is entitled to any portion of the deposit being withdrawn" when, in fact, he and his minor children were entitled to the funds and he had notified state entities he was going to bring this federal lawsuit. *E.g.*, Compl. ¶¶ 3, 5, 8, 60, ECF No. 1-4. He also alleged Lepore's spreadsheets failed to account for $142,060.53 in funds that were missing from the bank accounts of the estate and trust when those accounts were frozen, and faulted Judge Daley for failing to investigate the missing funds. *E.g., id.* ¶¶ 12, 28, 30.

crimes with respect to the trust funds.  He claimed he was denied due process in the state trial court based on the issuance of the false February 8 order, which judges and court personnel allegedly hid from him, and based on Judge Daley's failure to look into what happened to the missing trust funds.  Marchisotto also claimed the state appellate court and its judges violated his constitutional rights by failing to address his appeal and denying his motions to stay proceedings in the trial court pending disposition of the appeal, thereby allowing Lepore to "backfile" motions and fraudulent spreadsheets in the trial court.  And he alleged misconduct by other state officials, including the Governor and the Attorney General.  In his prayer for relief, Marchisotto sought $5 million in compensatory and punitive damages, and either an injunction compelling the immediate return of the $612,541.94 paid to Lepore or Lepore's immediate removal to a federal detention facility until the monies were repaid.  Compl. 39-41, ECF No. 1-2.

On April 21, 2022, the Appellate Division issued an opinion affirming the dismissal of the probate matter.  ECF No. 71-5 at 154-76.  Four days later, Marchisotto moved in this action for a preliminary injunction and temporary restraining order against the Appellate Division and two Appellate Division judges, seeking to void their April 21 decision in his case.  ECF No. 33.

On May 20, 2022, the Honorable Zahid N. Quraishi, to whom this case was then assigned, denied Marchisotto's request for injunctive relief, finding Marchisotto had failed to show he would suffer irreparable harm if relief were not granted.  Op. 6-7, May 20, 2022, ECF No. 44.  Judge Quraishi also dismissed Marchisotto's complaint in its entirety sua sponte.  The court first held that insofar as Marchisotto was seeking to litigate the validity of state court judgments in the probate matter, his claims were barred by the *Rooker-Feldman* doctrine. *Id.* at 7-8.  Next, noting that this case was Marchisotto's third federal-court action regarding the underlying state-court probate matter, the court held this action was barred by the doctrine of res judicata as to certain

defendants whom Marchisotto had previously sued in the earlier federal-court actions.[2]  *Id.* at 8-10.  Finally, the court dismissed the complaint as incomprehensible as to any newly added defendants, noting it was "unable to identify or ascertain any cognizable claims that would otherwise entitle [Marchisotto] to relief" against those defendants.  *Id.* at 10-11.

The order accompanying the court's ruling directed that Marchisotto's claims against the State of New Jersey, the Superior Court of New Jersey Appellate Division, New Jersey Superior Court Judge Alberto Rivas, and New Jersey Chief Justice Stuart J. Rabner were dismissed with prejudice, while the claims against the remaining defendants were dismissed without prejudice.  Order 2-3, May 20, 2022, ECF No. 45.  The order also directed Marchisotto to show cause within 20 days why the court should not enter a tailored pre-filing injunction that would prohibit him from filing, without prior leave of court, any further pro se lawsuits "relating to disputes concerning the state court probate matter involving his deceased father, or any perceived conspiracies emanating out of them."  *Id.* at 3.  After receiving one extension, Marchisotto responded to the show cause order on July 11, 2022 by filing with the court a copy of a judicial misconduct complaint.  ECF No. 48.  This case was subsequently reassigned—along with another case Marchisotto had filed against many of the same defendants[3]—to the Honorable Michael A. Shipp.

The following month, Marchisotto filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b), seeking permission to file a first amended complaint in this case.

---

[2] Although the opinion identified thirteen defendants against whom Marchisotto's complaint would be dismissed with prejudice, *see* Op. 9-10, May 20, 2022, ECF No. 44, the order accompanying the opinion dismissed the action with prejudice as to only four of those defendants, as discussed below, *see* Order 2-3, May 20, 2022, ECF No. 45.

[3] *See Marchisotto v. Malik et al.*, Civil No. 3:20-cv-20426 (D.N.J. filed Dec. 29, 2020).

Several months later, in January 2023, the Rule 60(b) motion was administratively terminated pending the court's appointment of limited purpose pro bono counsel to assist Marchisotto in drafting an amended complaint in *Marchisotto v. Malik et al.*, the related case also assigned to Judge Shipp.  *See* ECF No. 54.  The court thereafter made efforts to secure pro bono counsel for Marchisotto in the *Malik* case, ultimately appointing an attorney "for the limited purpose of drafting an Amended Complaint" in that case in June 2023.  ECF No. 410 in Civil No. 3:20-cv-20426.

By that time, both this case and the *Malik* case had again been reassigned, this time to the Honorable Robert Kirsch.  ECF No. 57; ECF No. 408 in Civil No. 3:20-cv-2026.  A week before this case was reassigned, Judge Shipp found good cause to reopen the case for consideration of Marchisotto's Rule 60(b) motion and ordered that the court would consider the motion and related correspondence "upon the appointment of *pro bono* counsel."  ECF No. 56.

After the case was reassigned, Marchisotto moved to disqualify both Judge Kirsch and Magistrate Judge Tonianne J. Bongiovanni and for a change of venue to the Eastern District of Pennsylvania, but the motions were denied.  *See* ECF Nos. 65, 69.

On November 13, 2023, Marchisotto again moved for a preliminary injunction and temporary restraining order.  Later the same month, he also moved to disqualify the New Jersey State Attorney General and his office from representing any of the state defendants in this case. Briefing of both motions extended into January 2024, in part because of the need to reassign the defense of many of the defendants in this matter to new Deputy Attorneys General after the previously assigned attorneys were named as defendants in the *Malik* case.

In the meantime, this case was reassigned to the undersigned district judge on intracircuit assignment in December 2023.[4]  ECF No. 82.

**DISCUSSION**

### A.    Motion for Preliminary Injunction and Temporary Restraining Order

Marchisotto seeks temporary injunctive relief against six of the named defendants in this action—Judge Daley, Louis Lepore, Debra Canova, Middlesex County Surrogate Claribel Cortes, New Jersey Attorney General Matthew J. Platkin, and Appellate Division Case Manager Karen L. Koval—claiming such relief is necessary "to halt ongoing illegal activities and prevent further irreparable harm that these activities are causing to the integrity of the judicial process and to [his] personal and financial well-being."  Pl.'s Prelim. Inj. & TRO Br. 1, ECF No. 71-1.

Like his original complaint in this action, Marchisotto's current motion for injunctive relief primarily focuses on a filing in the state-court probate action—a motion filed by Lepore, representing Canova, seeking authorization to deposit the balance of Marchisotto's distribution from his father's irrevocable trust with the Superior Court Trust Fund.[5]  Marchisotto claims this motion was fraudulently added to the state trial court docket despite his pending appeal, and was supported by "backdated" spreadsheets that were "newly fabricated" by Lepore in a "deliberate attempt to manipulate judicial proceedings" and obstruct justice.  *Id.* at 3-4, 7, 11.  Marchisotto

---

[4] This case was reassigned as a related case to the *Malik* case, which was reassigned to the undersigned on November 16, 2023.  ECF No. 455 in Civil No. 3:20-cv-20426.

[5] The motion was filed by Lepore on November 9, 2023, four days before Marchisotto filed the instant motion for injunctive relief on November 13, 2023.  Also on November 13, the Superior Court Appellate Division issued an opinion affirming the trial court's January 11 and February 8 orders granting the motions to withdraw funds deposited with the Superior Court Trust Fund and to make a final distribution, rejecting Marchisotto's claims of fraud against Canova, Lepore, and the trial court.  ECF No. 76-21.

also references a "suppression order" issued by the Appellate Division on November 28, 2022, which is alleged to "raise concerns about the restriction of legal rights and due process" and to exacerbate the harm caused by Lepore's fabricated spreadsheets.[6]  *Id.* at  3, 5, 14.  As to the other defendants against whom injunctive relief is sought, Marchisotto alleges, without elaboration, that Koval, an Appellate Division Case Manager, "provided misleading information in response to inquiries."  *Id.* at 3.  He repeats his earlier allegations regarding Lepore and Judge Daley's involvement in a "fraudulent scheme involving the misappropriation of $612,541.94 from the Superior Court Trust Fund Unit."  *Id.* at 7.  And he accuses the New Jersey Attorney General of covering up criminal acts by state officials, *id.* at 8, noting there are also "allegations indicating that federal judges may be deliberately delaying [this federal-court] case, potentially contributing to a cover-up of the underlying crimes," *id.* at 5.  The motion does not identify any actions taken by Cortes.

In light of Lepore's recent motion and "the alleged stalling by federal judges," *id.* at 11, Marchisotto seeks a preliminary injunction and temporary restraining order "to immediately halt any further alleged fraudulent actions, backdating of documents, destruction or alteration of evidence, and any efforts to cover up the alleged misconduct," *id.* at 17.  He also seeks the immediate disqualification of Deputy Attorneys General Christine A. Barris and Rachel B. Kristol (both of whom have withdrawn from the case); an order directing defendants to preserve evidence;

---

[6] A copy of this Appellate Division order, captioned an "Order Suppressing Brief," is attached to Marchisotto's motion for injunctive relief.  *See* ECF No. 71-8.  The order directs that, in light of Canova's failure to file a timely answering brief in Marchisotto's appeal from the trial court's January 11 and February 8 orders, "no brief or other papers on behalf of said respondent [i.e., Canova] will be accepted for filing except a motion to vacate this order."  *Id.*  The order thus suppresses only *Canova*'s filings in the appellate court.  It is difficult to see how it would cause any harm to *Marchisotto*'s due process or other legal rights.

sanctions and disciplinary action against any parties found to be engaging in unethical conduct or obstruction of justice; monetary damages and restitution; and a comprehensive audit by an independent body or monitor of the actions and decisions made by defendants in this matter. *Id.* at 17-18.

"A preliminary injunction 'is an extraordinary remedy . . . which should be granted only in limited circumstances.'" *Holland v. Rosen*, 895 F.3d 272, 285 (3d Cir. 2018) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994)). To obtain such relief, "the moving party must show as a prerequisite '(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted.'" *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). If these "threshold factors" are established, the district court must consider two additional factors: (3) "whether granting relief will result in even greater harm to the nonmoving party or other interested persons," and (4) "whether the public interest favors such relief." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021). The court must then "'determine[] in its sound discretion' whether the balance of all factors warrants granting preliminary relief." *Id.* (quoting *Reilly*, 858 F.3d at 179). But if either of the first two factors is not established, preliminary relief must be denied. *See id.* "The same standard applies to temporary restraining orders." *Kale v. Mayorkas*, Civ. No. 21-08095, 2021 WL 2652124, at *3 (D.N.J. June 28, 2021).

To establish the first factor, Marchisotto need not show he will more likely than not succeed on the merits, but he must show the chance of success is "significantly better than negligible." *Reilly*, 858 F.3d at 179 & n.3. Marchisotto has not made the required showing here. He has not established a likelihood of success on the merits of the claims in his original complaint because

that complaint was dismissed based on the *Rooker-Feldman* doctrine, res judicata, and pleading deficiencies. *See Baker v. Ahsan*, 785 F. App'x 904, 906 (3d Cir. 2019) (holding plaintiff failed to show a reasonable probability of success on the merits where his complaint was dismissed for failure to state a claim) *FuQua v. Massey*, 615 F. App'x 611, 613 (11th Cir. 2015) ("Because the complaint was properly dismissed, [plaintiff] cannot show a likelihood of success on the merits."). The dismissal was in part without prejudice, and Marchisotto has sought authorization, via his Rule 60(b) motion, to file an amended complaint. But no amended complaint has been filed to date, and Marchisotto's preliminary injunction motion contains only conclusory allegations regarding perceived litigation misconduct by Lepore and others. These allegations fall short of establishing a likelihood of success on the merits of claims Marchisotto might assert in a future amended complaint.

Marchisotto also has not made the required showing of irreparable harm. To establish this factor, he must "demonstrate[] a significant risk that he . . . will experience harm that cannot adequately be compensated after the fact by monetary damages." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000); *see also Reilly*, 858 F.3d at 179 n.4 ("[T]he availability of money damages for an injury typically will preclude a finding of irreparable harm."). And he must show the harm "is more likely than not" to occur "in the absence of preliminary relief." *Id.* at 179.

By Marchisotto's own account, this case centers on a series of actions—"fraudulent activities, bribery, and judicial misconduct in the management of [his deceased father's estate and irrevocable trust]"—that have "led to significant financial loss." Pl.'s Prelim. Inj. & TRO Br. 2, ECF No. 71-1. Marchisotto also alleges the challenged conduct "represent[s] a severe breach of legal and ethical standards" and raises due process concerns, *id.*, but the primary injury he claims to have suffered is financial, as evidenced by the fact that the main relief demanded in his original

complaint is monetary damages.  Compl. 39, ECF No. 1-2 (seeking $5 million in compensatory and punitive damages).  While the complaint also seeks injunctive relief, this relief is primarily aimed at obtaining return of money to the estate—the $612,541.94 that was authorized to be paid to the trustee for distribution.  *Id.* at 40.

Marchisotto claims the harm he seeks to prevent through issuance of a preliminary injunction "extends beyond financial loss, impacting the integrity of the judicial process and my constitutional rights."  Pl.'s Prelim. Inj. & TRO Br. 14, ECF No. 71-1.  But violations of the right to due process, the constitutional right at issue here, do not "*automatically* result in irreparable harm."  *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 484-85 (1st Cir. 2009).  In *Morton v. Beyer*, for example, the Third Circuit found the plaintiff failed to show irreparable harm even though he was likely to succeed on the merits of his due process claim where the plaintiff's claimed injury from the violation (lost income) was "purely economic in nature and thus compensable in money."  822 F.2d 364, 371-72 (3d Cir. 1987).  Here, too, the harm Marchisotto claims to have suffered from the defendants' alleged misconduct is financial.  Marchisotto has not shown these financial harms "cannot adequately be compensated after the fact by monetary damages."  *Adams*, 204 F.3d at 484-85.

Because Marchisotto has not established either a likelihood of success on the merits or irreparable harm, both of which are prerequisites for temporary injunctive relief, his motion for a preliminary injunction and temporary restraining order will be denied.

### B.      Motion to Disqualify

Marchisotto also seeks to disqualify the New Jersey Attorney General and his entire office from representing any of the state defendants in this case.  He argues the Attorney General has an inherent conflict of interest in representing other state defendants because he is named as a

10

defendant in this action.  He also suggests disqualification is warranted because certain state defendants have continued to engage in fraudulent and unethical conduct, undermining the fairness and impartiality of these proceedings.

A "district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it."  *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).  By local rule, the conduct of attorneys practicing in this district is governed by the "Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court . . . , subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law."  Local Civil Rule 103.1(a); *see also In re Boy Scouts of Am.*, 35 F.4th 149, 159 (3d Cir. 2022) ("The conduct of attorneys practicing in federal court is governed by the local rules of the court.").  Thus, in evaluating Marchisotto's motion to disqualify, the starting point is the New Jersey Rules of Professional Conduct.

As the moving party, Marchisotto bears the burden to show "disqualification is warranted, 'either because a [Rule of Professional Conduct] was violated or because sufficient doubt exists as to the propriety of further representation.'"  *Shaikh v. Germadnig*, Civ. No. 22-2053, 2022 WL 16716116, at *2 (D.N.J. Nov. 4, 2022) (quoting *Kaselaan & D'Angelo Assocs., Inc. v. D'Angelo*, 144 F.R.D. 235, 238 (D.N.J. 1992)), *aff'd*, 2023 WL 4534127 (D.N.J. July 13, 2023).  Even if this burden is satisfied, however, disqualification is not automatic, for "[e]ven when an ethical conflict exists (or is assumed to exist), a court may conclude based on the facts before it that disqualification is not an appropriate remedy."  *In re Boy Scouts*, 35 F.4th at 160.  Disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary."  *Shaikh*, 2022 WL 16716116, at *3 (quoting *Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996)).

The general rule regarding conflicts of interest is set forth in New Jersey Rule of Professional Conduct 1.7(a), which provides "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." For purposes of the Rule,

> [a] concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

N.J. R. Prof'l Conduct 1.7(a).

While the Rule prohibits representation of opposing parties in the same litigation, representation of parties "on the same side in the same civil litigation . . . does not always present a potential for a conflict of interest, and is not automatically barred." *N.J. Div. of Child Protection & Permanency v. G.S.*, 149 A.3d 816, 835 (N.J. Super. Ct. App. Div. 2016). Indeed, the New Jersey Supreme Court has recognized that "joint representation of clients with potentially differing interests [in a § 1983 action] is permissible provided there is a substantial identity of interests between them in terms of defending the claims that have been brought against all defendants." *In re Pet. for Review of Op. 552 of the Advisory Comm. on Prof'l Ethics*, 507 A.2d 233, 238 (N.J. 1986). Joint representation is permissible "if it does not appear clearly from the pleadings or from early discovery that the claims . . . will result in different and inconsistent defenses, or will, if successful, probably lead to independent or several, rather than overlapping or joint, compensatory relief against each class of defendants." *Id.* at 239; *see also G.S.*, 149 A.3d at 835 (noting "[a] disqualifying conflict may arise in representing co-defendants 'by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party

or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question'" (citation omitted)).

Marchisotto argues a conflict is present here because the Attorney General's obligation to impartially represent the state defendants is at odds with his personal interest in the outcome of this litigation, in which he is a defendant.  *See* Pl.'s Reply 7, ECF No. 88.  But he provides no explanation as to why this is so.  He has not shown, for example, that the Attorney General and the other state defendants represented by his office are likely to present inconsistent defenses, or that their positions in this litigation will otherwise be incompatible.

Moreover, nothing in the record supports the existence of a conflict here.  As noted, there is currently no operative complaint in this case, as Marchisotto's original complaint was dismissed and an amended complaint has not yet been filed.  And the original complaint was dismissed as to many of the defendants, including the Attorney General, on the ground that it was incomprehensible, leaving the court "unable to identify or ascertain any cognizable claim that would . . . entitle [Marchisotto] to relief."  Op. 10-11, May 20, 2022, ECF No. 44.  There is thus no basis for the Court to find a significant risk that the Attorney General's status as a defendant (or potential defendant) in this case will materially limit his office's representation of the state defendants.  *See Robinson v. Paulhus*, Civ. No. 19-12572, 2021 U.S. Dist. LEXIS 153006, at *6 (D.N.J. Aug. 12, 2021) ("To satisfy [Rule of Professional Conduct] 1.7, an actual conflict must exist; speculation about what may exist in the future is insufficient.").

If anything, the Attorney General's Office's handling of this case suggests the Office is making diligent efforts to *avoid* conflicts.  The state defendants were originally represented by two different Deputy Attorneys General, one representing the individuals and entitles affiliated with the State of New Jersey's Judiciary and the other representing the remaining state defendants.

When Marchisotto later named both attorneys as defendants in the *Malik* case, each promptly notified the Court that the case would need to be reassigned to new counsel within the Attorney General's Office.  *See* ECF Nos. 72 & 73.  And new counsel thereafter appeared for each group of defendants.  *See* ECF Nos. 81 & 86.

Finally, Marchisotto's suggestion that ongoing alleged misconduct by certain state defendants precludes the Attorney General from representing them also lacks merit.  The Attorney General's Office is defending the state defendants in this action pursuant to the Attorney General's statutory duty to "provide for the defense" of actions brought against current or former state employees "on account of . . . act[s] or omission[s] in the scope of [their] employment."  N.J. Stat. Ann. § 59:10A-1; *see* Judiciary Defs.' Letter Opp'n to Pl.'s Mot. to Disqualify 3, ECF No. 87; State Defs.' Letter Opp'n to Pl.'s Mot. to Disqualify 4-6, ECF No. 96.  The Attorney General may refuse to defend a state employee if (1) "the act or omission was not within the scope of employment"; (2) "the act or the failure to act was because of actual fraud, willful misconduct or actual malice"; or (3) "the defense of the action or proceeding by the Attorney General would create a conflict of interest between the State and the employee or former employee."  N.J. Stat. Ann. § 59:10A-2.  But the statute "expressly authorizes the *Attorney General* to determine whether [an] exception applies."  *In re Camden Police Cases*, Civ. No. 11-1315, 2011 WL 3651318, at *5 (D.N.J. Aug. 18, 2011) (emphasis added); *see also Prado v. State*, 895 A.2d 1154, 1162-63 (N.J. 2006) (noting the burden is on the Attorney General to justify a denial of representation).  Here, the Attorney General's Office has assumed the state defendants' defense in this matter.  That decision is entitled to deference from this Court.  *See In re Camden Police Cases*, 2011 WL 3651318, at *5.

Because Marchisotto has neither shown the Attorney General has an actual conflict of interest in representing the state defendants in this case nor established another basis for disqualification, the motion to disqualify will be denied.[7]

**CONCLUSION**

For the reasons set forth above, Marchisotto's motions for a preliminary injunction and temporary restraining order and to disqualify the Attorney General and his office from representing any of the state defendants in this matter will be denied.

Given the procedural posture of this matter, and to assist the Court in moving the case forward to a resolution, the parties will be directed to submit status reports addressing what further proceedings are necessary and appropriate in this case.

An appropriate order follows.


BY THE COURT:


  /s/ Juan R. Sánchez  
Juan R. Sánchez, C.J.

---

[7] In his reply to the opposition to the motion to disqualify filed by Deputy Attorney General Joseph V. Salvo on behalf of the state judiciary defendants, Marchisotto asks the Court to consider imposing sanctions on Salvo and the Attorney General for their "failure to provide a competent and responsive pleading in opposition to the Motion to Disqualify." Pl.'s Reply 18, ECF No. 88. The Court finds no basis to impose sanctions on these attorneys; hence, Marchisotto's request is denied.